IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 18, 2011

## STATE OF TENNESSEE v. JOHN WESLEY SHUTT, II

**Appeal from the Williamson County Circuit Court**
**No. I-CR025437     Robbie Beal, Judge**

---

**No. M2011-01211-CCA-R3-CD - Filed August 10, 2012**

---

The defendant, John Wesley Shutt, pled guilty to first offense DUI, a Class A misdemeanor, and was sentenced to eleven months and twenty-nine days. As part of his plea agreement, the defendant reserved a certified question of law: "whether the officer had probable cause to make the arrest." After careful review of the record, we agree with the trial court that the officer involved had probable cause to arrest the defendant. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JEFFREY S. BIVINS, J., joined.

Lee Ofman, of Franklin, Tennessee for the appellant, John Wesley Shutt, II.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Kim Helper, District Attorney General and Kelly Lawrence, Assistant District Attorney General, 21st Judicial District, for the appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL HISTORY

On February 14, 2011, the defendant was indicted on four counts: (1) driving under the influence of alcohol in violation of Tennessee Code Annotated section 55-10-401, (2) driving with a blood alcohol content ("BAC") greater than .08 percent in violation of the same statute, (3) speeding in violation of Tennessee Code Annotated section 55-8-152, and (4) failing to provide evidence of financial responsibility in violation of Tennessee Code

Annotated section 39-12-139(c). The defendant filed a pretrial motion to suppress certain evidence alleging, *inter alia*, that the arresting officer lacked probable cause to make the arrest. The trial court held a hearing concerning the defendant's motion on May 9, 2011, at which time the following evidence was presented:

The lone witness for the State was Trooper Allen Leverette of the Tennessee Highway Patrol, who testified that he was patrolling the Brentwood area on the evening of September 25, 2005. He testified that around 9:45 p.m., he observed a black Audi traveling eastbound on Moore's Lane. Officer Leverette testified that this vehicle appeared to be speeding, and when he checked the vehicle's speed by radar it confirmed that the vehicle was traveling 47 m.p.h. in a 35 m.p.h. zone. Officer Leverette testified that he turned on his vehicle's lights and siren and initiated a traffic stop. After pulling the Audi over, he made contact with the vehicle's driver, whom he identified as the defendant. Officer Leverette testified that as he was explaining to the defendant why he had been pulled over, he noticed the odor of alcohol emanating from the vehicle. He testified that he asked the defendant if he had been drinking, and the defendant responded that he had been consuming alcohol at Outback while watching football.

Officer Leverette asked the defendant to step out of the vehicle. Officer Leverette testified that after the defendant complied, he observed that he had bloodshot eyes, that his speech was "a little thick," and that he "was swaying back and forth." Based on these observations, Officer Leverette attempted to initiate field sobriety tests. The defendant told the officer that he did not want to take "any . . . speculative tests," but that he would be willing to take a blood test. Officer Leverette testified that he then placed the defendant under arrest and took him to the Williamson County Medical Center, where the defendant was given a blood test.

On cross-examination, Officer Leverette testified that the defendant pulled over as soon as he turned on his blue lights, and consequently he did not have any opportunity to observe the defendant's driving (other than to observe the speeding). Officer Leverette also testified that the odor of alcohol coming from the defendant's vehicle was "obvious." Officer Leverette testified that he had asked the defendant to exit his vehicle because of the smell of alcohol and because of the defendant's admission that he had been drinking that evening. Officer Leverette also testified that the defendant was unsteady while he was attempting to get out of his vehicle.

Defense counsel proceeded to impeach the witness with a prior statement from a preliminary hearing, in which Officer Leverette had testified that the defendant had not had any difficulty getting out of his vehicle. Defense counsel also impeached the witness with prior testimony in which he had stated that he did not yet believe that the defendant was

impaired at the time he asked the defendant to take the field sobriety tests.

Officer Leverette testified that he arrested the defendant immediately after the defendant refused to take the field sobriety tests. He conceded that the defendant's mental state appeared to be normal prior to and following his arrest. Officer Leverette also testified that there was no video recording of his encounter with the defendant on the night in question because the video system in his vehicle was down due to a conflict between the vehicle's camera and its radio system. Officer Leverette testified that he did not read the defendant his *Miranda* warnings following his arrest. Following this testimony the State rested.

The sole witness for the defense was Mr. Jon Lowrance. Mr. Lowrance testified that he worked as an energy reduction consultant in Nashville, Tennessee. Mr. Lowrance testified that on the evening of September 25, 2010, at approximately 9:30 p.m., he was having a conversation with the defendant *via* cell phone. The witness testified that this phone conversation lasted for about five minutes, during which time he and the defendant were brainstorming ideas for marketing and performing certain HVAC work. Mr. Lowrance testified that the defendant's speech was fine during this conversation and that the defendant was thinking clearly. He testified that there was nothing about his conversation with the defendant that would lead him to believe that the defendant had been drinking. He testified that the conversation ended abruptly when the defendant informed him that there was a police officer behind him with his lights on. Mr. Lowrance testified that the defendant told him that he would call him back, but he never did so. The defense rested after eliciting this testimony.

After considering this testimony, the trial court ruled that the officer had probable cause to arrest the defendant. The trial court reasoned that the defendant's act of speeding provided the officer with the probable cause necessary to pull over the defendant's vehicle. After commencing the traffic stop, the fact that the officer smelled alcohol provided the officer with the reasonable suspicion necessary to continue his investigation, and this smell combined with the defendant's admission that he had been drinking and his sway when he was walking was sufficient to establish probable cause for his ultimate arrest. In reaching this decision, the trial court stated that it gave very little weight to the officer's testimony that the defendant had difficulty talking and exiting his vehicle.

Following the trial court's ruling, the parties announced that they had previously agreed to a guilty plea if the trial court denied the defendant's motion to suppress, provided that the plea agreement reserved a certified question concerning whether the officer had probable cause to arrest the defendant. The trial court agreed that its ruling on this issue was dispositive of the entire case – stating its belief that the State would have had "no other evidence to proceed on" had the motion been granted – and consented to certify the question.

Here the transcript of the hearing on the defendant's suppression motion ends, but the record reflects that the defendant pled guilty to Driving Under the Influence in violation of Tennessee Code Annotated section 55-10-401, a Class A misdemeanor. The remaining counts in the indictment were either declared *nollo prosequi* or merged with this offense. The defendant was sentenced to eleven months and twenty-nine days, split two days in jail with the remainder to be served on supervised probation. The defendant filed a timely notice of appeal on June 7, 2012. Satisfied that the matter is now properly before us, we address the certified question.

**ANALYSIS**

The certified question before the court is whether Officer Leverette had probable cause to arrest the defendant. After reviewing the record in this matter, we conclude that he did.

When reviewing a trial court's decision concerning a motion to suppress, the losing party bears the burden of demonstrating that the trial court's decision was erroneous. *State v. Harts*, 7 S.W.3d 78, 84 (Tenn. Crim. App. 1999). The prevailing party is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing, as well as all reasonable inferences to be drawn from that evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Questions concerning the credibility of witnesses, the weigh and value to be given their testimony, and any resolution of conflicts in the evidence are entrusted to the trial judge as the finder of fact. *Id.* This court will not set aside the decision of the trial court unless the record evidence preponderates against the court's findings. *Id.* "The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews *de novo*." *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000).

Both the federal and state constitutions protect an individual's right to be free from an unlawful arrest. *See* U.S. CONST. AMEND. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."); TENN. CONST, ART. 1, SEC. 7 ("[T]he people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures."). With respect to an officer's full-scale arrest of an individual, these provisions require that such an arrest be supported by probable cause. *E.g., Beck v. Ohio,* 379 U.S. 89, 91 (1964) ("Whether th[e] arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it. . . ."). The certified question before the court presumes a full-scale arrest. Accordingly, the only issue before the court is whether the facts described above provided Officer Leverette with probable cause to arrest the

defendant for D.U.I.

"To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (*quoting Ornelas v. United States*, 517 U.S. 690, 696 (1996)). With respect to the defendant's specific arrest for the crime of D.U.I., "[t]he question of whether the arrest was supported by probable cause depends upon whether at the time the arrest was made there were facts and circumstances within the officer's knowledge which would warrant a man of prudence and caution in believing that the defendant had committed the offense of D.U.I." *State v. Evetts*, 670 S.W.2d 640, 642 (Tenn. Crim. App. 1984). "All information in the officer's possession, fair inferences therefrom, and observations, including past experiences, are generally pertinent." *Id.*

After reviewing the record, we are convinced that by the time of the defendant's arrest the officer had observed facts sufficient to justify a reasonable conclusion that the defendant had been driving while intoxicated. Crediting the officer's testimony and viewing it in the light most favorable to the State, at the time the arrest was made, the arresting officer (1) had just witnessed the defendant's vehicle speeding; (2) smelled the obvious odor of alcohol coming from the car; (3) observed the defendant's eyes to be bloodshot and his speech thick; and (4) viewed the defendant's body swaying. In addition, the defendant had just admitted to the officer that he had been drinking. Under these circumstances, a person of prudence and caution would believe that the defendant had been driving his vehicle while intoxicated. We agree with the trial court that the defendant's admission to drinking alcohol, the obvious odor of alcohol emanating from the defendant's vehicle, and his act of swaying after he exited his vehicle were of particular significance, and probably sufficient to establish probable cause even without the other factors.

The defendant's argument to the contrary largely consists of attacks on the police officer's credibility. The defendant asserts that the police officer's testimony "defies logic and reason" because: (1) the officer's notations on three different documents – the arrest warrant, the implied consent law form, and the tow-in sheet – all reflect a three-minute delay between the defendant's stop and his arrest, and the officer's testimony at the suppression hearing that he made a mistake on all three forms is "unbelievable," (2) the officer contradicted himself on the stand concerning whether he had personally filled out the tow-in sheet, (3) the officer's claim on the stand that he was on the scene for an extended period of time because he was waiting for another officer is not supported by the record, (4) the officer's claim that he was gathering clues amounting to probable cause while discussing the field sobriety tests with the defendant was not credible and conflicted with his earlier testimony given at a preliminary hearing, (5) the officer testified that the defendant's mental

state was "normal" on the night of the arrest, when alcohol consumption sufficient to impair the defendant's driving would have deprived the defendant of a clear mind, and (6) the officer's testimony conflicted with the testimony of defense witness Jon Lowrance, who testified that the defendant exhibited no signs of intoxication while on the phone with him immediately prior to his arrest.

Many of the defendant's points are not unreasonable. However, they suffice only to establish conflicts in the evidence that was presented to the trial court. The trial judge as the trier of fact was charged with the primary responsibility for evaluating the credibility of the witnesses, and he chose to credit enough of Officer Leverette's testimony to support a finding of probable cause, notwithstanding these apparent inconsistencies. This decision cannot be disturbed on appeal unless it lacks evidentiary support in the record – which it does not.

The defendant also asserts that the trial court applied the wrong standard of law in assessing the credibility of the officer at the suppression hearing. The defendant cites us to a portion of the record in which the trial judge stated "at the probable cause stage, the court has to consider that, in fact, the officer is telling the truth. . . ." Taken in isolation, this language would appear to indicate that the trial court had indeed applied an incorrect legal standard; there is no requirement that an officer's testimony be presumed to be true during a suppression hearing.

However, reviewing the record as a whole, we believe that the trial court applied the proper legal standards and that the language cited by the defendant was merely the trial court's less-than-artful way of expressing its decision to credit the officer's testimony over the arrest warrant and accompanying documents with respect to the amount of time that passed between the defendant's stop and his arrest. After finding that probable cause existed based on "the defendant's sway, the defendant's admission that he had been drinking and obvious odor of alcohol," the transcript reflects that the trial court stated:

> [Defense counsel] has pointed out the discrepancy in the times between the . . . time of the stop and the ultimate time of the arrest. That's obviously a very big issue. And of course if the officer made his conclusion within three minutes, that would certainly go to either this Court's or perhaps even the jury's opinion as to whether the officer had enough time to formulate his opinions properly. But hearing the officer attempted to – has attempted to make – to make some statements to reconcile those differences in time, in other words, he simply put down an approximation. While that may be good for the defense counsel for purposes of trial, at a probable cause stage, the Court has to consider that, in fact, the officer is telling the truth, that this was

an approximation, was not to specific time and it was simply a clerical error in his writing the times down.

The – unless the Court clearly finds that the trooper here is being an uncredible witness, which I don't find, then there's no reason for the Court to dispute that, in fact, this was merely a misnotation of times.

Certainly, again, if that is – is shown not to be the case at the trial of this matter, then the Court may reverse its decision here which I certainly can do at the conclusion of the State's proof or perhaps even the jury will find the officer's statements uncredible enough to put faith in them for purposes of – for purposes of the DUI.

By these statements, the trial court appears to have been attempting to convey its belief that, while defense counsel could raise the issue of the officer's credibility at trial and perhaps reach a different result, for purposes of determining probable cause (a "first review," as the trial court noted), the court was accepting the officer's explanation reconciling the differences in time because it had been shown no evidence that would lead it to believe otherwise. We believe that the trial court's decision in this regard was not unreasonable.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE